UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILANA TAYLOR,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 2:26-cv-00927 DC CSK<br>FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br>(ECF Nos. 10, 12) |

Plaintiff Kilana Taylor seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for with instructions to grant Plaintiff's claim for benefits. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, the Court recommends Plaintiff's motion be GRANTED, the Commissioner's cross-motion be DENIED, and the final decision of the Commissioner be REVERSED and REMANDED.

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. *See* Local Rule 304.

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On February 24, 2023, Plaintiff applied for supplemental security income under Title XVI of the Social Security Act, with an alleged onset date of February 15, 2023. Administrative Transcript ("AT") 216-225. Plaintiff alleged she suffered from severe scoliosis, autism, an intellectual disability, an executive function deficit, attention-deficit disorder ("ADD"), anxiety, obsessive-compulsive disorder ("OCD"), and Tourette's Syndrome. AT 259. Plaintiff's application was denied initially and upon review, and she sought a hearing before an administrative law judge ("ALJ"). AT 70, 94, 114. A hearing

was held on April 1, 2025. AT 51-69. Plaintiff appeared in person with counsel and testified about her impairments, and a vocational expert ("VE") testified about hypothetical available jobs in the national economy. *Id*.

On April 18, 2025, the ALJ issued a decision finding Plaintiff not disabled. AT 29-43. At step one, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since February 24, 2023, the date of her application. AT 34. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: scoliosis, depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and bipolar disorder. *Id*. The ALJ's analysis at step three was bifurcated because Plaintiff was 17 years old at the application date and attained age 18 on February 24, 2023. *Id*. The ALJ first concluded that prior to attaining 18 years of age, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listing. AT 34-35 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, for Plaintiff's physical impairments, the ALJ evaluated listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 101.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s) (for children)). For Plaintiff's mental impairments, the ALJ evaluated listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.15 (Trauma and stressor-related disorders), 112.04 (Depressive, bipolar, and related disorders (for children)), 112.06 (Anxiety and obsessive-compulsive disorders (for children)), and 112.15 (Trauma and stressor-related disorders (for children)).[2] AT 35. The ALJ concluded Plaintiff had moderate limitations in

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

"Paragraph C" sets the criteria for "serious and persistent mental disorders," requiring a showing of medically documented history of the existence of the disorder for a period of at least two years. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.c.

all four “Paragraph B” categories. *Id*. The ALJ also examined whether Plaintiff’s mental impairments qualify under “Paragraph C.” *Id*. The ALJ found that the criteria was not satisfied due to a lack of evidence showing Plaintiff had a minimal capacity to adapt to changes in her environment or her daily life. *Id*. Additionally, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that equaled the severity of the listings under 20 C.F.R. Part 416.924(d) and 416.926a. AT 35-37. Thus, the ALJ concluded that Plaintiff was not disabled prior to attaining age 18. AT 37.

Additionally, the ALJ evaluated Plaintiff at step three since attaining the age of 18 and likewise concluded she did not have an impairment or combination of impairments that met or medically equaled any listing. AT 38 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ evaluated listings 12.04, 12.06, and 12.15, as in the previous section. *Id*. The ALJ likewise concluded Plaintiff had moderate limitations in all four “Paragraph B” categories and that the “Paragraph C” criteria was not satisfied. *Id*.

The ALJ next found that since the age of 18 Plaintiff has the residual functional capacity (“RFC”) to perform light work as defined in 20 C.F.R. Part 416.967(b) except:

> She could frequently stoop and crouch; she could understand, remember, and carry out simple instructions; she could perform tasks that do not involve a specific production rate pace such as assembly line work or an hourly production quota work; she could deal with occasional changes in work routine; and she could have occasional interactions with coworkers and supervisors and no public or team work assignments.

AT 38. In making this finding, the ALJ considered Plaintiff’s symptoms “to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence,” medical opinions, and prior administrative findings. AT 39.

Evaluating the medical opinions on Plaintiff’s mental limitations, the ALJ found the opinion of Dr. Sonya Adamo, Psy.D., a state agency medical consultant to be persuasive. AT 40. Dr. Adamo opined Plaintiff could recall simple instructions, attend to simple tasks with adequate pace, do non-public work, and adapt to low-stress work. AT

41 (citing AT 71-83). The ALJ concluded that Dr. Adamo's opinion was supported by Plaintiff's Individualized Education Program ("IEP") notes, teacher reports, treatment for depression and anxiety, lack of testing for diagnoses of attention-deficit disorder, obsessive-compulsive disorder, Asperger's syndrome, and Tourette's syndrome, and the reports of Dr. Sara Bowerman, Ph.D. and Dr. Ikponmwosa Ogbeide, Psy.D., as discussed below. *Id*. The ALJ found Dr. Adamo's limitations were consistent with treatment records, such as Plaintiff's medical history, reports of symptoms to providers, notes from Plaintiff's IEP program showing that there was no concern with Plaintiff's communication and motor development, adaptive skills, and health, records showing Plaintiff had "positive" relationships with peers, and favorable reactions to medication. *Id*. (citing AT 557, 558, 556, 622).

Conversely, the ALJ found the medical opinion testimonies of consultative psychologists Dr. Bowerman and Dr. Ogbeide were unpersuasive. *Id*. Both doctors opined Plaintiff had moderate-to-marked impairments in understanding, remembering, and conducting simple one-or-two step job instructions. *Id*. (citing AT 488-97). Both doctors also opined Plaintiff had marked impairments in maintaining concentration, attention, pacing, tracking, and scanning, responding appropriately to coworkers, supervisors, and the public, responding appropriately to usual work situations, dealing with changes in a routine work setting, and interacting with others in socially acceptable ways. *Id*.

The ALJ concluded that both doctors' opinions were supported through their own examination findings. *Id*. However, the ALJ, by performing a consistency analysis using the same items from the administrative record as in her analysis of Dr. Adamo, found the doctors' opinions were less reasonable than that of Dr. Adamo and thus, unpersuasive. *Id*.

With regard to Plaintiff's physical impairments, the ALJ found the opinion of state medical consultant Dr. M. Acinas, M.D. to be persuasive. AT 41-42. Dr. Acinas opined Plaintiff could perform light exertional work, could frequently stoop and crouch, and

occasionally crawl. AT 41 (citing AT 71-83). The ALJ found the opinion was supported by Dr. Acinas' notation that Plaintiff has scoliosis. *Id*. The ALJ further concluded that Dr. Acinas' opinion was consistent with imaging that showed Plaintiff had a 64-degree thoracolumbar curve and from IEP notes that reported Plaintiff had no areas of concern in the categories of gross and fine motor development and no further health issues. AT 42 (citing AT 526, 528, 557-58).

At step four, the ALJ concluded Plaintiff had no past relevant work. *Id*. However, at step five, the ALJ determined Plaintiff was capable of performing other jobs in the national economy, including: (1) lab cleaner, Dictionary of Occupational Titles ("DOT") # 922.687-054, with 11,430 jobs in the national economy; (2) cleaner, DOT # 323.687-014, with 43,000 jobs in the national economy; and (3) marker, DOT# 209.587-034, with 44,300 positions in the national economy. Thus, the ALJ concluded Plaintiff was not disabled. AT 42-43.

On November 18, 2025, the Appeals Council denied Plaintiff's appeal. AT 13-18. Plaintiff filed this action requesting review of the Commissioner's final decision, and the parties filed cross motions for summary judgment. (ECF Nos. 1, 10, 12.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred by: (1) failing to assess all of Plaintiff's severe impairments at step two; (2) making findings on whether Plaintiff met or equaled a listing of impairments at step three without substantial evidence; (3) improperly rejecting Dr. Bowerman and Dr. Adamo's medical opinion testimonies; (4) failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; and (5) creating a flawed RFC which omitted the following: relevant medical opinion testimony; symptoms from severe impairments, such as Plaintiff's PTSD and panic attacks; and symptoms from what the ALJ deemed to be not medically-determinable impairments, such as Plaintiff's intellectual disorder, intermittent explosive disorder, and autism. Pl. Mot. at 11-23 (ECF No. 10).

The Commissioner contends the ALJ: (1) reasonably evaluated whether Plaintiff

had medically determinable impairments at step two; (2) reasonably found Plaintiff's mental impairments were not disabling under the listings at step three; (3) properly evaluated Dr. Bowerman and Dr. Adamo's medical opinion testimonies; (4) properly evaluated Plaintiff's subjective symptom testimony; and (5) created an RFC supported by substantial evidence. Def. Mot. at 4-13 (ECF No. 12).

## IV. DISCUSSION

### A. Medical Opinion Testimony

#### 1. Legal Standards

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among

differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

**2. Analysis**

a. *Dr. Sonya Adamo, Psy.D.*

Plaintiff argues the ALJ erred in evaluating Dr. Adamo's medical opinion testimony by omitting her moderate opined limitation that Plaintiff could complete a workday or work week or adapt to low-stress work despite finding the testimony persuasive. Pl Mot. at 22-23. Defendant contends that the RFC encompasses Dr. Adamo's opined limitations. Def. Mot. at 10.

A summary of Dr. Adamo's medical opinion can be found above. Dr. Adamo rated Plaintiff as moderately limited in her ability to complete a normal workday or workweek without interruptions. AT 81. Further, it appears the ALJ omitted this finding without explanation. While Defendant, in a post hoc argument, suggests Dr. Adamo's moderate findings were encapsulated by a narrative summary explaining that Plaintiff can attend to simple tasks, such findings are not present in the RFC. AT 38. Additionally, even if the ALJ were to have encapsulated the moderate limitation in completing a normal workday or work week into a limitation to simple tasks, it is error to do so, as a limitation to simple tasks would only encapsulate findings related to concentration, persistence, and pace. *See Panziera v. Berryhill*, 2018 WL 278623, at *20 (N.D. Cal. Jan. 3, 2018) (collecting cases holding that a limitation to simple, repetitive tasks, does not accommodate limitations other than those that concern concentration, persistence, and pace). Thus, the Court grants summary judgment in favor of Plaintiff on this issue, denies summary judgment for Defendant and need not reach Plaintiff's remaining argument on whether

the ALJ erred in omitting Dr. Adamo's opinion regarding Plaintiff's ability to perform low-stress work.

**B. Subjective Symptom Testimony**

**1. Legal Standards**

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not

enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

**2. Analysis**

Plaintiff argues the ALJ erred in the evaluation of her subjective symptom testimony by: (1) erroneously relying on IEP reports stating that there were "no major concerns" with Plaintiff's behavior; (2) erroneously relying on a Nevada County Human Services Agency report and benign mental status findings to discredit Plaintiff's testimony; (3) erroneously relying on chromosomal microarray analysis ("CMA") and Fragile X syndrome lab findings to discredit Plaintiff's testimony; and (4) failing to identify what testimony found to be not credible in her analysis. Pl. Mot. at 18-21.

In contrast, Defendant argues the ALJ properly evaluated Plaintiff's subjective symptom testimony because: (1) Plaintiff's symptoms showed improvement, medical records showed intact mental functioning, and her daily activities contradicted her allegations; and (2) the ALJ reasonably relied on Plaintiff's IEP records. Def. Mot. at 10-12.

At step four, the ALJ briefly summarized Plaintiff's testimony as her exhibiting intense mental health symptoms and back pain. AT 39. Plaintiff also alleged she has daily feelings of anxiety and suffers from anger triggers when she is in a noisy environment. AT 35. Plaintiff alleges she has anger-fueled outbursts in school. *Id*. Plaintiff alleges she often dissociates, which leads to difficulty focusing. *Id*. Plaintiff alleges she turns in assignments late at school and needs assistance from caregivers to attend appointments. *Id*. Plaintiff also alleges she has a history of self-harm. *Id*.

The ALJ began her analysis by summarizing the exhibits in the record that were consistent with Plaintiff's allegations, such as referencing a March 18, 2024 IEP report

that stated Plaintiff had difficulty with self-regulating her emotions and not meeting standards in the subjects of language arts and math. AT 39 (citing AT 547, 556). The ALJ also cited reports of self-harm and passive suicidal ideation. *Id.* (citing AT 707, 773-74).

The ALJ then proceeded to summarize evidence "not entirely consistent" with Plaintiff's allegations. The ALJ summarized additional findings form the March 18, 2024 IEP report that showed Plaintiff's teachers "had no major concerns," and that she was quiet, respectful, and making progress. AT 40 (citing AT 557). The ALJ referenced an assessment stating that Plaintiff had a friend group at school, volunteered at a business, and enjoyed art projects in her free time. *Id.* (citing AT 632). The ALJ also addressed normal mental status findings from an April 24, 2024 report and negative CMA and Fragile X findings. *Id.* (citing AT 670-673). The ALJ noted that despite a report from November 22, 2024 showing that Plaintiff had not experienced improvement in her symptoms and had suicidal ideation, she referenced additional reports from November 15, 2024 and January 16, 2025 where Plaintiff claimed her anxiety, anger, and depressive symptoms had improved. *Id.* (citing AT 792, 772-73, 781, 766). The ALJ concluded that Plaintiff's symptoms were not entirely consistent with the evidence. *Id.*

In sum, while the ALJ referenced several reports from the administrative record that she concluded undermined Plaintiff's testimony, she neglected to provide further analysis or explanation as to why they contradicted portions of Plaintiff's testimony. It is error for the ALJ to discount Plaintiff's subjective symptom testimony without an analysis of why she found specific statements were not credible. *See Lambert v. Saul*, 980 F. 3d 1266, 1277-78 (9th Cir. 2020); *see Brown-Hunter v. Colvin*, 806 F. 3d 487, 493-96 (9th Cir. 2015). Thus, the Court grants summary judgment in favor of Plaintiff on this issue, denies summary judgment for Defendant, and need not reach Plaintiff's remaining arguments as to how the ALJ erred in evaluating Plaintiff's subjective symptom testimony.

/ / /

### C. Other Issues/Claims

In light of the Court's conclusion that the ALJ erred in the evaluation of Dr. Adamo's medical opinion testimony and Plaintiff's subjective symptom testimony, it declines to reach the remaining issues presented by Plaintiff of whether the ALJ erred at step two, step three, evaluating Dr. Bowerman's medical opinion testimony, and Plaintiff's remaining RFC arguments.

## V. CONCLUSION

In conclusion, the Court grants summary judgment in favor of Plaintiff on whether the ALJ properly evaluated Dr. Adamo's medical opinion testimony and Plaintiff's subjective symptom testimony. With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d, at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler,* 775 F.3d, at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether Plaintiff was, in

fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed but must sufficiently analyze Dr. Adamo's opinion testimony and Plaintiff's subjective symptom testimony. The Court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The Court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find Plaintiff disabled during the entirety of the relevant period; may find Plaintiff eligible for some type of closed period of disability benefits; or may find that Plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

## **FINDINGS AND RECOMMENDATIONS**

Accordingly, the Court RECOMMENDS:

1. Plaintiff's motion for summary judgment (ECF No. 10) be GRANTED;
2. The Commissioner's cross-motion (ECF No. 12) be DENIED;
3. The final decision of the Commissioner be REVERSED and REMANDED; and
4. The Clerk of the Court is directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 20, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, tayl.0927.26.ss.msj.cjra